IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEBRASKA

```
NASSER KHALIL ALI,             )
                               )
          Plaintiff,           )     4:15CV3056
                               )
     v.                        )
                               )
CAROLYN W. COLVIN, Acting      )     MEMORANDUM OPINION
Commissioner of Social         )
Security Administration,       )
                               )
          Defendant.           )
_____)
```

       This matter is before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration ("the Commissioner"). Nasser Khalil Ali ("Ali") appeals the Commissioner's final decision denying Ali's application for disability benefits. After reviewing the record, the briefs, and the applicable law, the Court finds that the Commissioner's decision should be affirmed.

**Procedural Background**

       On or about August 10, 2012, Ali filed an application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") (Tr. 180-95). On October 4, 2012, the plaintiff's applications were initially denied (Tr. 94-97). Ali requested a reconsideration of his denial, which was again denied (Tr. 102-11).

On January 17, 2013, Ali requested a hearing before an administrative law judge ("ALJ") (Tr. 114-15). Ali disagreed with the denial because he claimed he was unable to work due to depression, stress, dizziness, sadness, and anger issues (*Id.*).

The ALJ, James Harty, held an administrative hearing on October 21, 2013, in Wichita, Kansas (Tr. 34-55). On January 23, 2014, the ALJ found that Ali was not under a disability within the meaning of the Social Security Act from June 30, 2009 to the date of the decision (Tr. 15-33). On March 29, 2015, the Appeals Council denied Ali's request for review and affirmed the ALJ's decision (Tr. 1-6). Ali timely filed this appeal on May 28, 2015 (Filing No. 1).

**Factual Background**

Ali alleges that he became disabled on June 30, 2009, because depression, stress, dizziness, sadness, and anger issues limited his ability to work (Tr. 180-95, 229). Ali was born on January 1, 1979, and was 34 at the time of the administrative hearing (Tr. 180). He has a sixth grade education, and has been unemployed since 2011 (Tr. 229-30). He speaks very little English and has to use an interpreter when visiting doctors (*See* Tr. 340-42). His previous job history includes dishwasher, meat cutter, temporary laborer, and line worker (Tr. 230). Ali has been

diagnosed with major depressive disorder, post traumatic stress disorder ("PTSD"), and schizoaffective disorder (Tr. 318, 399).

Ali sought treatment at the Community Mental Health Center ("CMHC") as early as 2001 (Tr. 333). However, he has not received continuous treatment from the CMHC throughout the years. On May 9, 2012, Ali sought mental health treatment from the CMHC (Tr. 316-27). Ali reported frequent headaches and occasional dizziness (Tr. 324). He was diagnosed with major depressive order, recurrent, and PTSD (Tr. 318). Ali was referred to Tina Vest, MSN, APRN, a mental health nurse practitioner (*Id.*).

On June 21, 2012, Ali visited Tina Vest ("Vest") (Tr. 340-42). Ali informed Vest that he felt like he could not work due to marked agitation, anger, anxiety, and depression (Tr. 340). Vest found Ali to be guarded but cooperative (Tr. 341). Vest found no evidence of cognitive decline and Ali's insight and judgment to be fair (*Id.*). Vest diagnosed Ali with major depressive disorder recurrent, mood disorder NOS, and PTSD (*Id.*). Vest prescribed Symbyax to address anger and hostility issues (Tr. 342). In addition, Ali was referred to psychotherapy (*Id.*).

On August 6, 2012, Ali had a follow up appointment with Vest (Tr. 339). Vest noted some improvement (*Id.*). Ali reported doing much better, which included sleeping better, less anxiety, and hearing voices on a less frequent basis (*Id.*). On September

10, 2012, Ali visited Vest for another follow up (Tr. 338). Vest's impression was that Ali was stabilized (*Id.*). Ali reported doing much better, and he was less anxious and depressed (*Id.*). At this time, Ali had not been to psychotherapy, even though he was referred (*Id.*). Vest recommended therapy (*Id.*). On November 26, 2012, Ali saw Vest again complaining of headaches (Tr. 446). Vest's impression was that Ali did not have a lot of improvements (*Id.*). Vest signed Ali up for case management services (*Id.*). On December 27, 2012, Ali had another follow up with Vest (Tr. 447). Vest found that Ali was improving (*Id.*). Vest initiated case management to help with socialization and access to services (*Id.*). Vest stated, "I value whether or not he has capacity or ability to work given his diagnosis." (*Id.*). On January 24, 2013, Ali saw Vest and his case manager (Tr. 448). Vest noted that Ali had been out of his medications for four or five days (*Id.*). Vest found him to be stable, but needed to work on socialization (*Id.*).

On February 26, 2013, and March 6, 2013, Ali underwent a two-day psychological evaluation with Kristen Laib, M.S.(" Ms. Laib"), and Joseph Swoboda, Ph.D. (" Dr. Swoboda")(393-401). Ali was referred for a diagnostic evaluation by his community support worker, and because Ali's brother expressed concerns about Ali's ability to function independently and maintain employment (Tr.

-4-

393). The Brief Psychiatric Rating Scale ("BPRS") was administered (Tr. 396). Ali received a score of 65, which falls within the "markedly ill" category indicating a significant presence of symptoms that are likely to affect Ali's level of functioning (*Id.*). The Vineland-II was also administered to assess adaptive behavior (Tr. 397). Ali's Adaptive Behavior Composite was classified as "low" which indicates that his adaptive functioning is below 99 percent of his peers (*Id.*).

Ms. Laib and Dr. Swoboda diagnosed Ali with schizoaffective disorder and PTSD rule out: cognitive disorder, NOS (Tr. 399). They found that Ali "is likely to experience severe deficits in living independently and caring for his daily needs." (Tr. 400). In addition, "occupational achievement is likely to be severely limited." (*Id.*). Ms. Laib and Dr. Swoboda found that Ali may have suffered a head injury as a young child (Tr. 401). They recommended that Ali participate in a full neurological evaluation to identify possible brain abnormalities (*Id.*).

On March 19, 2013, Vest met with Ali and noted no real change and recommended injectable medication therapy for compliance and adherence (Tr. 449). On May 3, 2013, Vest noted that Ali was much more improved (Tr. 450). Ali had been working with his case manager (*Id.*). Ali's mood was more stable, and he

was less paranoid and suspicious (*Id.*).  He was more social, and joined a gym for exercise (*Id.*).  On May 28, 2013, Vest noted that Ali had improved, and that his mental status was essentially normal (Tr. 451).  On June 27, 2013, Ali had a follow up with Vest (Tr. 452).  Vest found Ali was responding well to medications and was more social, and his paranoia improved if not nonexistent (*Id.*).  Vest noted that Ali's mental status was essentially normal (*Id.*).

Ali met with his case manager twice in the month of July 2013 (Tr. 488, 89).  On both occasions, Ali mentioned that he was not getting outside the house as much, but he was still going to the gym to swim (*Id.*).  The case manager noted that Ali was doing well (*Id.*).  In September of 2013, Ali met with his case manager three times (Tr. 485-86).  Ali reported that he was continuing to get out of the house (*Id.*).  The case manager noted that Ali appeared well groomed and alert on all three occasions (*Id.*).  On October 1, 2013, Ali told his case manager that he had been getting out of the house almost every day (Tr. 483).  Ali went swimming every morning and played cards with friends every night (*Id.*).  On October 15, 2013, Ali reported that he had not been leaving the house, and had been staying up all night and sleeping during the day (Tr. 484).  On October 22, 2013, Ali told his case manager that he had been taking his medication

improperly so that he could sleep all day and stay up all night (*Id.*). The same day, Ali met with Vest (Tr. 476). Vest instructed Ali to take his medications as prescribed (*Id.*). Vest's impression noted major depressive disorder recurrent, moderate, mood disorder NOS, PTSD, decompensation (*Id.*).

**Administrative Hearing**

On October 21, 2013, ALJ Harty held an administrative hearing regarding Ali's request for social security (Tr. 34-55). At the beginning of the hearing, Ali's attorney made a request for a consultative exam (Tr. 37).

Ali testified that he was unable to fill out a job application due to his lack of knowledge of the English language (Tr. 40). When asked about what he does all day, Ali stated that he sleeps during the day and stays up at night (Tr. 41-42). Ali testified that some of his daily activities include watching television, doing laundry, going on walks, playing soccer, and going to appointments (Tr. 41-43).

When asked about his depression diagnosis, Ali stated that he feels very sad for two hours each day (Tr. 43). Ali testified that he was scared to go outside by himself (Tr. 44). When asked about having a depressive or anxious episode at work, Ali stated that he would need a seventeen-minute break (Tr. 45). During a break, Ali would need to wash his face, get a drink, and

-7-

sit for ten minutes (*Id.*). However, when asked about the medications he takes, Ali said that he felt good (Tr. 46-47). Ali was on two medications, one for sleep, and one for hallucinations, anxiety, and depression (*Id.*). Ali also testified that he had twelve to fourteen headaches per day (Tr. 47).

Next, the ALJ examined the Vocational Expert ("VE")(Tr. 49). The ALJ asked the following hypothetical:

> Assume an individual of the claimant's age, education, training and work history who does not communicate in English. He can perform a full range of work at all exertional levels except he is limited to performing simple tasks that involve only simple work-related decisions and in general relatively few workplace changes. He can occasionally interact with supervisors and co-workers, but must avoid interaction with the general public. Could this person perform any of the claimant's past work?

(Tr. 50). The VE answered that Ali could perform all of the work discussed in the hypothetical question (*Id.*). The VE also stated that there were other occupations that Ali could perform, such as automobile detailer, packager machine, industrial cleaner, and egg handler (Tr. 50-51). The VE testified that the typical break schedule for the occupations would consist of a fifteen-minute

-8-

break every two hours with thirty minutes for lunch (Tr. 52). The occupations generally do not allow for unscheduled breaks (*Id.*). In addition, the employee would have to work a 90-day probationary period before missing days (*Id.*). At that time, an employee could only miss one or less days per month (*Id.*).

At the end of the hearing, Ali's attorney made a closing statement (Tr. 53). His attorney argued that due to his diagnoses of schizoaffective disorder, PTSD, and depression, along with his anger issues and head injury sustained as a child, Ali cannot perform any meaningful work or substantial gainful activity (*Id.*). The ALJ closed the hearing and took the request for a consultative examination under advisement (Tr. 54).

**The ALJ's Findings**

The ALJ concluded that Ali had not been under a disability within the meaning of the Social Security Act (Tr. 19). The ALJ denied Ali's request for a consultative evaluation (Tr. 18). The ALJ found the evidence of record to be thorough, and an evaluation was not warranted (*Id.*).

The ALJ found that Ali met the insured status requirements of the Social Security Act through June 30, 2009 (Tr. 20). Ali had not engaged in substantial gainful activity since the alleged onset date of June 30, 2009 (*Id.*). The ALJ concluded that Ali had the following severe impairments:

reactive psychosis, major depression with psychotic features, major depressive disorder, schizoaffective disorder, and PTSD (Tr. 21).  The ALJ found that Ali did not have an impairment or a combination of impairments that meets or medically equals the severity as required by the regulation (*Id.*).  Finally, the ALJ found that Ali has the residual functional capacity to perform a full range of work at all exertional levels, that he could perform simple tasks, and occasionally interact with supervisors and coworkers (Tr. 22-23).

       The ALJ found that Ali's statements about the intensity, persistence, and limiting effects of his psychological impairments were not entirely credible (Tr. 23).  Medical records indicate that Ali has a history of hallucinations, anxiety, and difficulty socializing (Tr. 25).  However, when he was on medication he had many improvements and some symptoms of his impairments went away (*Id.*).  In addition, the ALJ found that evidence of Ali's work history in 2009 and 2011 weighs against the credibility of his statements about the inability to work (Tr. 26).

       The ALJ found that Ali would be capable of performing past relevant work as a line worker and meat trimmer (Tr. 27).  In addition, the ALJ noted that there were other jobs existing in the national economy that Ali could perform (Tr. 28).  As a

-10-

result, the ALJ found that Ali was not disabled under the Social Security Act (Tr. 29).

**Standard of Review**

When reviewing an ALJ's decision, the Court "must determine 'whether the ALJ's decision complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole.'" *Martise v. Astrue*, 641 F.3d 909, 920 (8th Cir. 2011) (quoting *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010)). "Substantial evidence" is:

> relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Substantial evidence on the record as a whole, however, requires a more scrutinizing analysis. In the review of an administrative decision, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight. Thus, the court must also take into consideration the weight of the evidence in the record and apply a balancing test to evidence which is contradictory.

*Id*. at 920-21.

"'If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision.'" *Partee v. Astrue*, 638 F.3d

-11-

860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)). The Court may not reverse the ALJ's decision "merely because [the Court] would have come to a different conclusion." *Teague v. Astrue*, 638 F.3d 611, 614 (8th Cir. 2011)(citation omitted). The claimant "bears the burden of proving disability." *Id*. at 615.

**Law and Analysis**

Ali challenges the final decision of the Commissioner of the Social Security Administration, which adopted the ALJ's findings that Ali was not disabled under the Social Security Act. In his brief, Ali asserts three errors to the ALJ's decision: (1) The ALJ erred by finding that the consultative examination for neuropsychological evaluation was not warranted; (2) the ALJ erred because the ALJ's decision to discredit Ali's testimony was not based on substantial evidence; and (3) the ALJ's unfavorable decision is not supported by the record as a whole.

**1. The ALJ's Denial of the Request for a Consultative Examination.**

Ali alleges that the ALJ failed to fully develop the record when the ALJ denied his request for a consultative neurological evaluation. An ALJ has a duty to develop the record, but "this duty is not ever-ending and an ALJ is not required to disprove every possible impairment." *McCoy v.*

*Astrue*, 648 F.3d 605, 612 (8th Cir. 2011)(citing *Barrett v. Shalala*, 38 F.3d 1019, 1023 (8th Cir. 1994)).  "The ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled." *Id.* (citing *Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986)).

Dr. Swoboda recommended a neurological evaluation because Ali reported that he suffered a head injury as a small child (Tr. 401).  The ALJ noted that no other medical source had ever recommended such testing for Ali (Tr. 18).  There is no known injury, just a possible brain injury based on Ali's alleged head injury as a child (Tr. 401).  In addition, the ALJ found Ali's subjective complaints not entirely credible (Tr. 23).  As a result, the ALJ found the record to be thorough, and the evaluation to be unwarranted (Tr. 18).

In this case, the ALJ found that the medical records were sufficient to determine whether Ali was disabled (*Id.*).  The ALJ's decision to deny the request for a consultative examination was supported by substantial evidence.

**2. Evaluation of Ali's Credibility**.

An ALJ's credibility findings must be supported by substantial evidence.  *Robinson v. Sullivan*, 956 F.2d 836, 839 (8th Cir. 1992).  When reviewing a claimant's subjective

complaint, the ALJ must consider the following:  the claimant's daily activities; the duration, frequency, and intensity of the pain; precipitating and aggravating factors; dosage, effectiveness and side effects of medication; and functional restrictions.  *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).  An ALJ is required to make an "express credibility determination" when discrediting a social security claimant's subjective complaints.  *Lowe v. Apfel*, 226 F.3d 969, 971–72 (8th Cir. 2000).  If the ALJ gives a "good" reason for not crediting the claimant that is supported by the record, the Court will defer to the ALJ's judgment.  *Robinson*, 956 F.2d at 841.

In this case, the ALJ found that Ali's subjective complaints were not fully credible due to the objective medical evidence (Tr. 23).  The ALJ noted that Ali's statements concerning the intensity, persistence, and limiting effects of the symptoms are not entirely credible (*Id.*).  When Ali was compliant with his medication, Ali did not report problems with his limitations and generally did well (Tr. 25).  While on medication, Ali's mental status was described as "essentially normal" and his paranoia was described as "improved, if not nonexistent" (Tr. 451-52).  In addition, the ALJ found that Ali's work history did not support the credibility of his assertion that he could not work (Tr. 25).  Ali worked in 2009 and 2011

(Tr. 26). Ali did not lose or quit his job in 2009 due to his impairments, but only stopped working because his contract expired (Tr. 26).

Based on objective medical evidence, and past work history, the ALJ did not find Ali's subjective complaints to be entirely credible. The Court finds that the ALJ's credibility findings are supported by substantial evidence.

### 3. ALJ's Decision Supported by the Record as a Whole.

The Court must affirm the decision of the ALJ "if it is supported by substantial evidence in the record as a whole." *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might find it adequate to support the conclusion." *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001)(citations omitted). "The ALJ is in the best position to determine the credibility of the testimony and is granted deference in that regard." *Id.*

Ali argues that the ALJ focused on limited episodes of improvement which the record as a whole does not support. The claimant points to a history of problems with anger and employment, his isolative personality, his communication and language issues, and his mental health issues, to demonstrate that he would not be able to obtain and keep employment. The

defendant argues that the claimant's improvement with treatment supports the ALJ's decision that Ali's mental impairments were not disabling. After reviewing the record, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole.

**Conclusion**

Substantial evidence in the record as a whole supports the ALJ's findings. The Commissioner's denial of Ali's benefits claim will be affirmed. A separate order will be entered in accordance with this memorandum opinion.

DATED this 15th day of July, 2016.

BY THE COURT:

/s/ Lyle E. Strom
_____
LYLE E. STROM, Senior Judge
United States District Court